Norman H. TAYLOR

v.

Ronald BROWN.

Civil Action No. DKC 93–3745.

United States District Court, D. Maryland.

Dec. 8, 1995.

Norman H. Taylor, Silver Spring, MD, pro se.

Lynne A. Battaglia, Office of the U.S. Attorney, Baltimore, MD, Maury S. Epner, Office of the U.S. Attorney, Greenbelt, MD, for defendant.

### *MEMORANDUM OPINION*

CHASANOW, District Judge.

Plaintiff, who is proceeding *pro se*, brought this action against Defendant Ronald Brown, Secretary, United States Department of Commerce, alleging unlawful employment discrimination based upon age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633(a) ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1985, and the personnel practices set forth in 5 C.F.R. §§ 300.101–103 and 41 C.F.R. § 60–3. Currently pending and ready for resolution is Defendant's motion for summary judgment. (Paper No. 13).

Plaintiff has responded to this motion, (paper No. 15), and Defendant has replied. (Paper No. 16). No hearing is deemed necessary, and the court now rules pursuant to Local Rule 105.6. For the reasons discussed herein, Defendant's motion for summary judgment will be granted.

## I. *BACKGROUND*

Plaintiff is employed as a program manager for the Small Business Innovation Research Program at the National Institute of Standards and Technology ("NIST"), a bureau of the United States Department of Commerce ("the Agency"). In June 1992, the Agency posted Vacancy Announcement NIST/92–1012/RF for a Supervisory Contract Specialist, ZA–1102–V. The Vacancy Announcement described the duties of the position as follows:

> The incumbent is responsible for providing management/support to [NIST] in the areas of procurement and supply operations including contracts, grants, purchasing, shipping and receiving, storeroom, warehouse, traffic management and property management. The incumbent manages the acquisition processes involved in the procurement of supplies, services, construction, ADP, and research and development requirements. The incumbent is responsible for the accountability, inventory, utilization, and disposal of all NIST property; provides direct support to the NIST storeroom operations; provides central receiving, delivering, pick-up, shipping and warehousing services for equipment and materials; and arranges for moves of household goods pertaining to first-duty station requirements. The incumbent provides program implementation, financial management, and human resource management of procurement and supply operations.

Plaintiff, along with ninety-two other individuals, submitted an application for the position. Sixty-three of the applicants, including Plaintiff, were "status" applicants, meaning that they were federal employees at the time of application or had reinstatement eligibility back into the competitive service. The others were classified as "non-status," meaning that they were not federal employees at the time of application and did not have reinstatement rights.

The application process transpired in several stages. The first stage of review took place in the NIST Personnel Office. The NIST Personnel Office determined that thirty-seven of the status applicants, including Plaintiff, and seventeen of the non-status applicants met the minimum qualifications for the position. The NIST Personnel Office referred these applications to the Merit Assignment Program panel ("MAP Panel") for the next stage of the analysis.

The MAP Panel, a group of three Agency employees, was assigned the duty to evaluate and rate competing candidates on the degree the candidates possessed job-related knowledge, skills, abilities, or other characteristics. The MAP Panel was selected by the Director of Administration of NIST, Guy Chamberlin, along with the assistance of NIST's Personnel Division. Mr. Chamberlin was the selecting official for the vacant position.

The MAP Panel, in conducting the second stage of evaluation, reviewed and ranked each of the fifty-four applicants on the basis of the "Quality Rankings Factors" that had been formulated by Mr. Chamberlin and the NIST Personnel Office. The Quality Rankings Factors were: (1) Knowledge of federal acquisition, assistance and supply regulations; (2) Ability to manage an organization; and (3) Ability to implement an on-line data processing system in the delivery of procurement, grants or supply services. The MAP Panel assigned each applicant a numerical rating on each of the three factors.

The MAP Panel subsequently forwarded a list of the ten status and three non-status applicants with the highest scores to Mr. Chamberlin. Plaintiff's name was not included on the list of the ten highest scoring status applicants. After discovering that he had not been referred to the selecting official for further consideration, Plaintiff sent a memorandum to Ms. Dowd, Director of NIST's Personnel Division questioning this action. Ms. Dowd asked two personnel management specialists to re-evaluate Plaintiff's application. They concluded that the MAP Panel had erred in not referring Plaintiff's

application to Mr. Chamberlin "since his background qualifies him to be among the highest qualified candidates." Ms. Dowd then forwarded Plaintiff's name along with the other ten status applicants to Mr. Chamberlin for consideration.

During the third stage of review, Mr. Chamberlin proceeded to interview all eleven status applicants who had been referred to him, including Plaintiff. After the interviews, Mr. Chamberlin narrowed his focus to two applicants, Mr. Osinski and Mr. Kelly. Mr. Chamberlin checked their personal references, reinterviewed them, and eventually choose Mr. Osinski for the position.

On February 9, 1993, Plaintiff notified the Equal Employment Opportunity Commission of his intent to file a civil action alleging age discrimination. Plaintiff subsequently filed this lawsuit on November 9, 1993.

## II. *SUMMARY JUDGMENT*

### A. Standard Of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. (citations omitted).

## B. ANALYSIS

### 1. Age Discrimination under Title VII, Section 1985, and Personnel Regulations

 Plaintiff has alleged age discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1985, 5 C.F.R. §§ 300.101–103 and 41 C.F.R. § 60–3. The statutes Plaintiff is attempting to utilize do not provide cognizable causes of action for age discrimination. Title VII is limited to discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Age is not an appropriate basis of discrimination under Title VII. *Kremer v. Chemical Constr. Corp.* 456 U.S. 461, 465 n. 4, 102 S.Ct. 1883, 1889 n. 4, 72 L.Ed.2d 262 (1982). Additionally, the ADEA is the exclusive remedy for claims of age discrimination in federal employment. *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir.), *cert. denied*, 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989).[1] Therefore, Plaintiff does not have a cause of action for age discrimination under Title VII, § 1985, or the personnel regulations. Accordingly, judgment will be entered against him on these claims.

### 2. Age Discrimination Under the ADEA

 To establish a claim of age discrimination under the ADEA, the Plaintiff must prove that but for the Plaintiff's age, the adverse employment decision would not have been made. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1314–15 (4th Cir.1993). Plaintiff can satisfy his burden of proof by either direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985), or through the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The *McDonnell Douglas* approach consists of three stages of analysis summarized as follows:

> The plaintiff must first make out a *prima facie* case of discrimination. Establishing a *prima facie* case shifts a burden of production to the defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse action. If the defendant produces evidence of such a reason, then the plaintiff must show that the reason presented by the defendant is merely a pretext for discrimination. The plaintiff retains the ultimate burden of persuasion throughout the process.

*Jamil v. Secretary, Dep't of Defense*, 910 F.2d 1203, 1206 (4th Cir.1990); *see also Goldberg v. B. Green & Co.*, 836 F.2d 845, 847 (4th Cir.1988) (adopting *McDonnell Douglas* proof scheme in ADEA cases); *Fink v. Western Electric Co.*, 708 F.2d 909 (4th Cir.1983) (same).

 In the first stage of the *McDonnell Douglas* framework, Plaintiff must prove that: (1) he was a member of a protected class; (2) he applied for and was qualified for a position for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) that the position remained open and the employer continued to seek applications from persons with his qualifications outside the protected class. *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir.1995) (citations omitted); *see also McDonnell Douglas*, 411 U.S. at 801, 93 S.Ct. at 1823–24. These factors should not be rigidly applied, and "[t]he facts necessarily will vary in ... cases, and the specification above of the *prima facie* proof required from the [plaintiff] is not necessarily applicable in every respect in differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *see Rachelson v. Secretary, U.S. Dep't of Health & Human Servs.*, 834 F.Supp. 879, 884 (D.Md.1993) (replacing fourth prong of *prima facie* case with "someone else was hired"). Ultimately,

> [t]o establish a *prima facie* case of age discrimination under the ADEA a plaintiff

---

1. Judge Ramsey, in an unreported opinion involving the same Plaintiff and the same employer, *Taylor v. Mosbacher*, R–89–213 (Paper No. 32), has already held that a § 1985(3) action is preempted by the ADEA. Judge Ramsey held that *Zombro*, holding that actions cognizable under the ADEA may not be brought under § 1983, applies with equal force to its conspiracy counterpart, § 1985(3).

must prove, at least by circumstantial evidence, **facts which would enable the factfinder to conclude with reasonable probability that in the absence of any further explanation, the adverse employment action was the product of age discrimination.**

*Mitchell,* 12 F.3d at 1315 (emphasis added).

With this issue in mind, it is questionable whether Plaintiff has produced evidence that, absent further explanation, creates an inference of age discrimination. Plaintiff has produced evidence that he is within a protected class; his date of birth is August 22, 1934 making him fifty-seven at the time of his application. 29 U.S.C. § 631(a) (1985 & Supp.1995) (ADEA protects individuals over the age of forty). Plaintiff has also established that he was qualified for the position for which NIST was seeking applicants and that he was rejected for that position. However, there seem to be no further facts that would tip the scales in favor of a finding of age discrimination.

■ The first three factors alone are not enough. *Holmes v. Bevilacqua,* 794 F.2d 142, 147 (4th Cir.1986) (citing *U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). Since the subject application procedure did not occur purely chronologically, but rather from a pool of applicants, the fourth prong should be modified in some way to show that age was a factor considered in the nonselection. *Holmes,* 794 F.2d at 147 (modifying *prima facie* case for a pool of applicants in a race discrimination case). The only "evidence" presented is Plaintiff's deposition in which he states that he thinks that Mr. Osinski, the selectee, was ten years younger than Plaintiff. Even if this were admissible evidence, the selectee would have been forty-seven at the time of application and also within the protected class under the ADEA. *See Goldberg v. B. Green & Co.,* 836 F.2d 845, 849 (4th Cir.1988) (holding that discharged 50 year old employee failed to establish *prima facie* case where he was replaced by 56 year old person). The court does not mean to suggest that there could never be a *prima facie* case given the above

ages, only that in this situation, the evidence of age discrimination appears lacking.

■ Fortunately, the outcome of this case does not turn solely on the *prima facie* case. Even assuming, without deciding, that Plaintiff has established a *prima facie* case, the Defendant has clearly met its burden of presenting a legitimate nondiscriminatory reason for the failure to hire. Defendant has stated that Mr. Chamberlin sought to hire an individual who had both research and development construction experience as well as grant program experience. While Plaintiff had experience relating to one of these factors, Mr. Osinski had experience relating to both construction management and grants.

■ Accordingly, any presumption of discrimination created by the *prima facie* case "drops from the case," and Plaintiff bears the ultimate burden to prove intentional discrimination. *Mitchell,* 12 F.3d at 1314 (citations omitted). The Plaintiff must show both that the given reasons were false and that discrimination was the real reason for the non-selection. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Plaintiff has produced no evidence of pretext. Even construing Plaintiff's arguments liberally, they are wholly unfounded and clearly contradicted by Defendant's evidence. Plaintiff first argues that while the government now contends that construction and grant experience are essential to the position, they were not listed in the Vacancy Announcement and were not critical to the position. The administrative procedures which govern the selection process for the job at issue are set forth in the Department of Commerce's administrative manual. The entire selection procedure including the initial OPM qualifications, the Map Panel's ranking factors, and the selecting official's interview were all done in accordance with the Department of Commerce's administrative manual. Plaintiff has provided no evidence to the contrary.

Further, Plaintiff attempts to make several arguments that question Mr. Chamberlin's opinion of Plaintiff's qualifications. Plaintiff expresses his own views as to his qualifica-

tions and the necessity for certain experience for the position.[2] "The self-perception of a plaintiff in an ADEA or Title VII suit as to his or her other qualifications is irrelevant; what matters is 'the perception of the decision-maker.'" *Douglas v. PHH FleetAmerica Corp.*, 832 F.Supp. 1002, 1010 (D.Md.1993) (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980)).

Plaintiff further argues that construction related experience is not a valid job related factor and that the selecting official went beyond the minimum qualification requirements for the job. He further contends that the current selectee does not now use these skills in the position. There is absolutely nothing wrong with Mr. Chamberlin utilizing considerations that may go above and beyond the minimum requirements necessary to be referred to him for the final stage of evaluation. *See Wileman v. Frank*, 979 F.2d 30, 37 (4th Cir.1992) ("When two applicants meet the minimum educational qualifications of a position, Title VII does not prevent an employer from preferring the applicant who has educational qualifications which surpass the minimum requirements of the position."). It is perfectly understandable that Mr. Chamberlin desired the construction related experience in light of the evidence that the selectee was required to supervise the construction of the new facilities.

Plaintiff finally contends, as evidence of pretext, that Plaintiff's qualifications for the position were better than the selectee's because he was ranked numerically higher by the Map Panel. Plaintiff fails to understand that the numerical scoring by the Map Panel was only relevant during the second stage of the application process. Once the Map Panel referred the finalists to Mr. Chamberlin, he was free to choose from among them. He did not have to take into account the Map Panel score that was only relevant at the prior stage. *See Sandhu v. Virginia, Dep't of Conservation & Recreation*, 874 F.Supp. 122, 127 (E.D.Va.1995) ("the former step of the process merely 'gets someone in the door.' On the other hand, the personal interview is often the determinative factor in many hiring positions.") (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.), *cert. denied*, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981)).

### III. CONCLUSION

Plaintiff has failed to establish a genuine dispute as to a material fact with respect to both a *prima facie* case and the legitimate nondiscriminatory reason articulated by the Defendant for the nonselection for the Supervisory Contract Specialist position. Therefore, judgment will be entered against him for his age discrimination claim under the ADEA. Judgment will also be entered against Plaintiff with respect to his claims of age discrimination under Title VII, § 1985, and the regulatory provisions. A separate order will be entered.

---

2. Even so, Plaintiff's argument is severely crippled by his deposition testimony that seems to concede his lack of this particular expertise.